# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

No. 17-288V

(Not to be Published)

```
* * * * * * * * * * * * * * * * * * * * * *
COOPER J. HUMPHRIES,                      *
                                          *
                                          *      Chief Special Master Corcoran
                                          *
                    Petitioner,           *
                                          *      Dated: April 9, 2021
v.                                        *
                                          *
                                          *
                                          *
                                          *
                                          *
SECRETARY OF HEALTH AND                   *
HUMAN SERVICES,                           *
                                          *
                    Respondent.           *
                                          *
* * * * * * * * * * * * * * * * * * * * * *
```

*Jessica Ann Wallace*, Siri & Glimstad, LLP, New York, NY, for Petitioner.

*Mark Kim Hellie*, U.S. Dep't of Justice, Washington, DC, for Respondent.

**DECISION DISMISSING PETITION**[1]

On March 1, 2017, Cooper Humphries filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program")[2]. Mr. Humphries alleged that he developed postural orthostatic tachycardia syndrome ("POTS") as a result of receiving two

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). This means that the Decision will be available to anyone with access to the internet. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

doses of the human papillomavirus ("HPV") vaccine on July 1, 2015, and August 14, 2015, respectively. *See generally* Petition (ECF No. 1). After the claim's initiation, Petitioner submitted medical records from several treating physicians. On August 24, 2017, Respondent filed a Rule 4(c) Report, recommending that compensation was inappropriate in this matter, and that the case should be dismissed. Respondent's Report, filed Aug. 24, 2017 (ECF No. 11).

To support the claim, Petitioner filed a total of eight expert reports from Drs. Svetlana Blitshteyn, M.D., a neurologist and POTS specialist, Thomas Berger, M.D., a thoracic surgeon, and Lawrence Steinman, M.D., a neurologist. First Blitshteyn Report, filed as Ex. 15 on Dec. 11, 2017 (ECF No. 15-1); Second Blitshteyn Report, filed as Ex. 43 on June 8, 2018 (ECF No. 25-1); Third Blitshteyn Report, filed as Ex. 60 on Mar. 4, 2019 (ECF No. 35-1); Fourth Blitshteyn Report, filed as Ex. 88 on Nov. 11, 2019 (ECF No. 49-1); Fifth Blitshteyn Report, filed as Ex. 97 on July 21, 2020 (ECF No. 57-1); Berger Report, filed as Ex. 58 on Feb. 26, 2019 (ECF No. 34-1); First Steinman Report, filed as Ex. 64 on Mar. 5, 2019 (ECF No. 36-1); Second Steinman Report, filed as Ex. 89 on Nov. 11, 2019 (ECF No. 50-1).

Respondent also filed several expert reports—eight in total—from Drs. Lindsay Whitton, M.B., Ch.B., Ph.D., an immunologist, and Christopher H. Gibbons, M.D., a neurologist and autonomic disorders specialist, as well as supporting medical literature. First Whitton Report, filed as Ex. A on Mar. 9, 2018 (ECF No. 22-1); Second Whitton Report, filed as Ex. F on Sept. 6, 2018 (ECF No. 29-6); Third Whitton Report, filed as Ex. H on Apr. 22, 2020 (ECF No. 55-7); Fourth Whitton Report, filed as Ex. M on Dec. 10, 2020 (ECF No. 60-2); First Gibbons Report, filed as Ex. B on Mar. 9, 2018 (ECF No. 21-1); Second Gibbons Report, filed as Ex. E on Sept. 6, 2018 (ECF No. 29-1); Third Gibbons Report, filed as Ex. G on Apr. 22, 2020 (ECF No. 55-1); Fourth Gibbons Report, filed as Ex. L on Dec. 10, 2020 (ECF No. 60-1). Both parties submitted a plethora of scientific and medical literature in further support of their respective positions.

On December 10, 2020, Petitioner was instructed to file either additional supplemental expert reports or a status report indicating how he wished to proceed. Scheduling Order, dated Dec. 10, 2020. In the meantime, the case was transferred to me from Special Master Roth on January 29, 2021. *See* Notice of Reassignment, dated Jan. 29, 2021 (ECF No. 65). Shortly thereafter, on February 23, 2021, Petitioner indicated his intent to dismiss the matter (*see* Status Report, filed Feb. 23, 2021 (ECF No. 66)), and he filed his motion to dismiss on March 25, 2021 (ECF No. 67) ("Mot.").

Petitioner specifically requests that I dismiss his claim prior to issuance of a full written decision, and despite the fact that both sides invested a substantial amount of time and effort on obtaining expert support for or against the claim, so that he can opt out of the Program and pursue a third party action in district court against the manufacturer of the HPV vaccine. Mot. at 1. On April 6, 2021, Respondent filed a brief in reaction to Petitioner's Motion (ECF No. 68) ("Resp.").

Respondent contests the relief sought because Petitioner's Motion does not include language conceding his inability to satisfy his burden of proof under *Althen v. Sec'y of Health & Hum. Services*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). Response at 2–4.

## ANALYSIS

The specific provisions under the Vaccine Rules for ending a case *before* a decision has been issued are largely inapplicable herein. Petitioner may no longer avail himself of Vaccine Rule 21(a)(1)(A), which governs voluntary dismissals before service of the Rule 4(c) Report (since that report was filed more than four years before), and Respondent has not stipulated to dismissal under Rule 21(a)(1)(B). In addition, even if the parties had so stipulated, Petitioner seeks entry of a judgment (a prerequisite to embarking on a lawsuit against the HPV vaccine's manufacturer), whereas Vaccine Rule 21(a) would only result in an "order concluding proceedings." Rule 21(a)(3).

Accordingly, the only remaining channel for the relief Petitioner requests is a "motion seeking dismissal"—an informal mechanism developed in the Program for ending cases, and employed when a petitioner determines that the claim cannot succeed, or simply because the claimant chooses not to continue with the claim (but arrive at that conclusion after the time for Rule 21 dismissal has passed). *See, e.g.*, *Goldie v. Sec'y of Health & Hum. Servs.*, No. 18-1476V, 2019 WL 6045647, at *1 (Fed. Cl Spec. Mstr. Oct. 11, 2019). Petitioners who wish to dismiss a case under these circumstances usually include in their dismissal motion an acknowledgement that the claim cannot be substantiated under the *Althen* prongs. These words are missing from Petitioner's Motion—on the contrary, he emphasizes that his choice to opt out of the Program should in no way be viewed as a concession on the claim's merits. Motion at 1–2. Petitioner does, however, acknowledge that any Decision dismissing the case at this point will not only be adverse to any parallel claim seeking relief in the Program, based on the vaccinations alleged causal herein, but also may well include some comment on the evidence filed. *Id.* at 2.

Thus, although it is true that the present circumstances do not afford Petitioner a means of dismissal directly under the Vaccine Rules, dismissal of petitions *can* still occur at this point in the claim's life. Indeed, the rules of the Court of Federal Claims (which are properly applied herein)[3] permit dismissal of claims at a petitioner/plaintiff's request and "on terms that the court considers proper." RCFC 41(a)(2).

---

[3] The Vaccine Rules specifically stated that the Rules of the Court of Federal Claims "apply only to the extent they are consistent with the Vaccine Rules," and otherwise empower special masters to "regulate the applicable practice" under the Vaccine rules "[i]n any matter not specifically addressed" therein. Vaccine Rule 1(b) and (c). Here, I find that permitting dismissal—in the form stated in this Decision—based on a rule of the Court of Federal Claims is fully consistent with the Vaccine Rules, given that language of Vaccine Rule 21 does not cover voluntary dismissal by court order, whereas RCFC 41 does cover voluntary dismissal by court order. Thus RCFC 41(a)(2) addresses a situation not contemplated by Vaccine Rule 21.

I find Petitioner's Motion is appropriately granted, even though it does not contain the customary acknowledgement that the claim cannot succeed in the Program. Expediency, judicial efficiency, and providing fairness to Vaccine Program claimants—values that constantly inform the work of special masters in deciding vaccine injury claims—all support allowing dismissal when requested by a petitioner. Dismissal of the case will obviate the need to write a lengthy decision, and cut off the prospect of future appeal as well (at least on matters not pertaining to attorney's fees), thus further preserving judicial resources.

However, and in accordance with RCFC 41(a)(2), this Decision shall include an express limitation in order to make it conform to the requirements of Section 12(d)(3) of the Act. In particular, the matter is dismissed *with prejudice.* Rule 41(a)(2) gives the Court of Federal Claims discretion as to whether a dismissal should be with or without prejudice. *See Giesecke & Devrient GmbH v. United States*, 146 Fed. Cl. 631, 641 (Fed. Cl. 2020) ("[u]nder Rule 41(a)(2), a voluntary dismissal by court order is 'without prejudice' unless the court finds that the defendant will suffer legal prejudice, such as when a plaintiff "does not seek dismissal until a late stage" in the litigation"). There are three factors to consider on whether a dismissal should be with or without prejudice: "(i) the burden on the defendant if the case were to be dismissed without prejudice; (ii) the progress of the litigation; and (iii) the diligence and good faith of the plaintiff." *Klamath Irrigation District v. United States*, 116 Fed. Cl. 117, 119 (Fed. Cl. 2014).

Here, the late stage of the litigation—a case pending for over four years, featuring multiple experts and reports, and full filing of relevant records and other proof—weighs in favor of dismissal with prejudice. The case simply has advanced too far to be permitted to be dismissed at this late date, only to come to life possibly later if Petitioner or his counsel have second thoughts. I also dismiss with prejudice because this case is yet another Program case involving the HPV vaccine being dismissed largely to avoid the possibility of an adverse determination by the Office of Special Masters. Although I do not find the Court Rules, the Vaccine Rules, or the Act itself *prevent* a petitioner from requesting eleventh-hour dismissal of their claim, the fact that this has become a trend in many HPV cases means Petitioner cannot expect the claim to have any possible "future" in the Program once dismissed under these circumstances.

Whether the present claim *could* have met the preponderant evidentiary standard required for a positive entitlement determination also weighs somewhat on my determination.[4] In other HPV vaccine cases, my extensive familiarity with the causal theory in question (due to ruling on the same kind of claim previously), as well as the specific facts in the matter, permitted me to state unequivocally that the claim would not have succeeded. *See, e.g., Otto v. Sec'y of Health & Hum.*

---

[4] I note that Respondent has not conceded that the claim possessed reasonable basis, and therefore may challenge any final fees request in this matter on that ground. In addition, I will take into account the eleventh-hour abandonment of the claim in determining fees, as it is not a practice that should be rewarded in the Vaccine Program.

4

*Servs.*, No. 16-1144V, 2020 WL 4719285 (Fed. Cl. Spec. Mstr. June 17, 2020) (case dismissed after holding two-day trial, but noting that petitioner had not successfully met his burden of proof, based on consideration of trial record). I also have uniformly held that the HPV vaccine has not been demonstrated to cause POTS in numerous prior cases. *McKown v. Sec'y of Health & Hum. Servs.*, No. 15-145V, 2019 WL 4072113 (Fed. Cl. Spec. Mstr. July 15, 2019); *Johnson v. Sec'y of Health & Hum. Servs.*, No. 14-254V, 2018 WL 2051760 (Fed. Cl. Spec. Mstr. March 23, 2018). My preliminary, and admittedly cursory, review of the claim and filings in support has identified some issues that likely may have prevented a favorable entitlement decision.[5] Nevertheless, the matter was only transferred to me recently, and therefore my incomplete familiarity with the facts of this case, or the specific theories offered herein, prevent me from stating more definitively that Petitioner could not have succeeded.

At bottom, the Vaccine Rules empower special masters to dismiss cases for lack of prosecution, "for failure to prosecute or comply with these rules or any order of the special master or the court." Rule 21(b)(1). No entitlement determination need be made under such circumstances. Here, Petitioner has expressly and on the record indicated he does not intend to pursue the claim. It is therefore properly dismissed.

## CONCLUSION

Accordingly, and for the aforementioned reasons, Petitioner's Motion for a Decision Dismissing the Case is hereby GRANTED, and the Petition is dismissed **with prejudice**. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[6]

**IT IS SO ORDERED.**

                                                                        s/ Brian H. Corcoran
                                                                        Brian H. Corcoran
                                                                        Chief Special Master

---

[5] In particular, one of Petitioner's experts, Dr. Blitshteyn, highlighted the known association between adrenergic antibodies and the onset of POTS. Fifth Blitshteyn Rep. at 2–3. Dr. Steinman further supplemented Petitioner's argument by identifying sequential homologies between components of the HPV vaccine and adrenergic receptors in the body. Dr. Steinman did concede, however, that "[t]here is no clear, certain, or definitive explanation for how POTS arises," and the condition can be influenced by a number of internal and external factors. First Steinman Rep. at 7. Additionally, it does not appear that Mr. Humphries has ever undergone testing to identify whether he even possesses the adrenergic antibodies essential to his proposed theory of causation. Respondent also provided several expert reports and epidemiological evidence that potentially undermines Petitioner's claim. *See* Fourth Whitton Rep. at 9–10 (citing R. Wernich Thomsen et al., *Hospital Records of Pain, Fatigue, or Circulatory Symptoms in Girls Exposed to Human Papillomavirus Vaccination: Cohort, Self-Controlled Case Serie, and Population Time Trend Studies*, 189 Am. J. Epidemiology 277, 284 (2020)).

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.