# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 17-288V
(to be published)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | |
| COOPER J. HUMPHRIES, | * | |
| | * | Chief Special Master Corcoran |
| Petitioner, | * | |
| | * | |
| v. | * | Filed: October 26, 2021 |
| | * | |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Jessica Ann Wallace*, Siri & Glimstad, LLP, New York, NY, Petitioner.

*Mark Kim Hellie,* U.S. Dep't of Justice, Washington, DC, Respondent.

## DECISION GRANTING ATTORNEY'S FEES AND COSTS[1]

On March 1, 2017, Cooper Humphries filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petitioner alleged that he had experienced Postural Orthostatic Tachycardia Syndrome ("POTS") due to the administration of the human papillomavirus ("HPV") vaccine on July 1, 2015, and an additional dose on August 14, 2015. Petition (ECF No. 1) at 1–2. Not long after the case was reassigned to me, Petitioner

---

[1] Because this Decision contains a reasoned explanation for my actions in this case, it must be posted on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix). Petitioner

moved for dismissal on March 25, 2021 (ECF No. 67), and a decision granting the motion was entered on April 9, 2021. ECF No. 69.

Before I became responsible for this matter, Petitioner had previously requested an interim award of attorney's fees and costs on March 4, 2020. Motion for Interim Attorney's Fees and Costs, dated March 4, 2020 (ECF No. 52) ("Interim Fees Mot."). Petitioner received $74,873.36, representing $42,901.50 in fees and $31,971.86 in costs, with minor adjustments to rates or requested but unsubstantiated costs. Decision, dated December 4, 2020 (ECF No 59) ("Interim Fees Decision"), at 13.

Petitioner has now filed a motion for a final award of attorney's fees and costs. Motion, dated Sept. 27, 2021 (ECF No. 73) ("Final Fees Mot."). Petitioner requests $27,453.10 in fees and costs for the work of two attorneys, Ms. Jessica A. Wallace and Ms. Debra A. Gambella, and three paralegals. *Id.* at 22. Petitioner also seeks $10,312.50 solely for expert costs. *Id.* at 10. Respondent reacted to the final fees request on October 12, 2021. *See* Response, dated Oct. 12, 2021 (ECF No. 74) ("Response"). Respondent requests I apply discretion in determining the appropriateness, and scope, of any fees award, and does not otherwise formally concede to or oppose the motion.

For the reasons set forth below, I hereby **GRANT IN PART** Petitioner's motion, awarding fees and costs in the total amount of **$24,707.79** reflecting $15,426.54 in attorney's fees and $9,281.25 in costs.

## ANALYSIS

I. **Petitioner's Claim had Reasonable Basis**

Although the Vaccine Act only guarantees a reasonable award of attorney's fees and costs to *successful* petitioners, a special master *may* also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, reasonable basis is only a threshold requirement in unsuccessful cases—establishing it does not *obligate* a special master to award fees, and the calculation of the sum to be awarded is otherwise subject to the same reasonableness standards governing all fees determinations.

A claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the *claim* itself—counsel's conduct in prosecuting the claim is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. Reasonable basis

inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what was learned about the evidentiary support for the claim as the matter progressed. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation).

The standard for reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[3]

This claim's overall background bears on its reasonable basis. The determination to seek dismissal came four and one-half years after the matter's initiation—and thus after substantial time had been invested in the case (as reflected by the prior interim fees award). In addition, issues with the claim's substantive merit were raised four years ago, in Respondent's initial Rule 4(c) Report, which identified the extent to which Petitioner relied on the primarily temporal association between vaccination and Petitioner's POTS. Report, dated August 24, 2017 (ECF No. 11) ("Report") at 12. Thereafter, Petitioner filed eight expert reports or supplemental reports, while Respondent filed seven. This is a significant amount of work to be performed in a case that will not be resolved formally.

Now, however, rather than let the matter be determined through the Vaccine Program, Petitioner has made the tactical choice to withdraw, preferring instead to seek adjudication as part of a class action claim pending against the HPV vaccine's manufacturer, Merck. ECF No. 67 at 1. This is not the first instance in which a Vaccine Program claimant has made such a choice. *See, e.g.*, *Miller v. Sec'y of Health & Hum. Servs.*, No. 17-1476V, 2020 WL 7868161 (Fed. Cl. Spec. Mstr. Nov. 24, 2020); *Otto v. Health & Hum. Servs.*, No. 16-1144, 2020 WL 4719285 (Fed. Cl. Spec. Mstr. June 17, 2020). While I have been lenient in permitting dismissal in this context, based on the overarching view that a claimant should be "master of his claim," I have also noted that the determination to dismiss suggests a lack of faith in the claim's likely Program success—and that, based on my treatment of similar claims involving the HPV vaccine, the theories underlying them

---

[3] *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

are largely unpersuasive.

Despite the above, I find that (given the leniency of the reasonable basis standard) the claim had sufficient objective support to entitle Petitioner to a fees and costs award of *some* amount. The fact of Petitioner's post-vaccination injury is not disputed, there is some treater support in the record for a vaccine association, and Petitioner offered competent experts to bulwark his claim. Thus, the "scintilla of evidence" standard governing reasonable basis supports a finding on this issue in Petitioner's favor. I have certainly granted attorney's fees awards in prior cased involving the HPV vaccine and POTS or other similar injuries implicating dysautonomia, despite my misgivings as to the strength of scientific basis for the claim. *See,* e.g., *K.B.H. v. Sec'y of Health & Hum. Servs.*, No. 17-1739V, 2021 WL 1344029 (Fec. Cl. Spec. Mstr. Jan. 8, 2021); *McKown v. Sec'y of Health & Hum. Servs.*, No. 15-145V, 2019 WL 7604714 (Fed. Cl. Spec. Mstr. Dec. 18, 2019); *Johnson v. Sec'y of Health & Hum. Servs.*, No. 14-254V, 2018 WL 3991262 (Fed. Cl. Spec. Mstr. July 3, 2018).

## II.     Calculation of Fees

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method— "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis* exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for her attorneys and support staff, based on the years work was performed:

| **Attorney** | **2020** | **2021** |
|---|---|---|
| **Ms. Debra Gambella, Esq.** | -- | $380.00 |
| **Ms. Jessica Wallace, Esq.** | $231.00 | $241.00 |
| **Paralegal** | | |
| **Ms. Jessica Wallace (as paralegal)** | $162.00 | $168.00 |
| **Ms. Kimberly Hertz** | $162.00 | $168.00 |
| **Ms. Jennifer Malainy** | $162.00 | -- |
| **Ms. Patricia Chen** | $162.00 | -- |

Final Fees Mot. at 23.

Ms. Gambella and Ms. Wallace practice in New York City—a jurisdiction that has been deemed "in forum." Accordingly, they are entitled to the rates established in *McCulloch*. *See Mulliken v. Sec'y of Health & Hum. Servs.*, No. 13-635V, 2017 WL 3298976, at *2 (Fed. Cl. Spec. Mstr. July 5, 2017).

The rates requested for Ms. Wallace are also consistent with what has previously been awarded for her time, in accordance with the Office of Special Masters' fee schedule and previous interim fees in this case.[4] *Aagotnes v. Sec'y of Health & Hum. Servs.*, No. 18-631V, 2021 WL 815916 at *3 (Fed. Cl. Spec. Mstr. July 20, 2021) (lowering Ms. Wallace's requested rates to that requested in 2020). Ms. Gambella's rate has not previously been addressed in any prior fees determinations, but the rate for the single year she performed work on this case is in accordance with the fee schedule and her overall expertise. Final Fees Mot. at 25. I thus find no cause to reduce them in this instance. I also will award the time billed to the matter since the date of the interim fees award (subject to the overall reduction discussed below).

### III.   Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special

---

[4] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/node/2914 (last visited Mar. 22, 2021).

5

masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $10,312.50 in costs, solely based on the fees incurred since the interim award for the work of expert Svetlana Blitshteyn, M.D. and Lawrence Steinman, M.D. ECF No. 73, Ex. 2 at 10. Dr. Blitshteyn's final invoice was of $7,700.00, and Dr. Steinman's was for $2,612.50. *Id.* That prior interim award granted Dr. Blitshteyn $10,375.00, and Dr. Steinman $3,000.00 (ECF No. 59 at 12)—so all told, expert costs in this matter approached $25,000.00. Dr. Blitshteyn's hourly rate is $400.00 per hour, and Dr. Steinman's rate is $550.00 per hour, both of which I find reasonable. The final sums to be awarded them are consistent with what they received in the interim award, and I make no adjustments (other than the across-the-board adjustment set forth below) to the time they billed.

**IV.    Reduction of Award in Light of Dismissal and Claim Weakness**

I am permitting a final award in this case even though the claim was literally unsuccessful. However, the context in which this case was dismissed, and the history of similar dismissals involving the HPV vaccine, compels me to impose *some* limitation on the total amount to be awarded.

As noted, many other petitioners have recently opted to dismiss a pending Vaccine Program case, essentially because their counsel have sought what they likely deem "higher ground" from which to prosecute the claim (and perhaps also based on the sense that the claim was unlikely to succeed in *this* forum). I have sustained dismissal requests in such circumstances over the Respondent's objection—but I have also warned claimants that there were costs to using the Program as a "pass through," especially if the fees incurred were substantial. *Otto v. Sec'y of Health & Hum. Servs.*, No. 16-1144, 2020 WL 5031956, at *2 (Fed. Cl. Spec. Mstr. July 24, 2020).[5] Since the first time this issue was presented to me in *Otto*, I have allowed dismissal of several similar claims, as have other special masters. *See e.g.*, *Summers v. Sec'y of Health & Hum. Servs.*, No. 20-1280V, 2021 WL 4065532 (Fed. Cl. Spec. Mstr. Aug. 10, 2021); *Sicard v. Sec'y of Health & Hum. Servs.*, No. 16-332V, 2021 WL 778040 (Fed. Cl. Spec. Mstr. Jan. 13, 2021).

Special masters need not engage in a line-by-line review of fees requests when making reductions, and in fact are permitted to make fair across-the-board cuts. *Hammitt v. Sec'y of Health & Hum. Servs.*, No. 07-170V, 2011 WL 1827221, at *3 (Fed. Cl. Spec. Mstr. April 7, 2011). And

---

[5] As discussed in *Otto*, individuals who believe they were injured by a vaccine have the ability under the Act to bring a certain kind of claim against the manufacturer, but only if they first satisfy their remedies in the Program. *Otto*, 2020 WL 5031956, at *2. It is thus not literally improper to file a Program claim, and then later "pull" it for the purpose of bringing a slightly different version of the claim against the manufacturer (even though the Act expressly limits the nature of that claim). *See* Sections 21-23. And although the Act and Vaccine Rules provide for some circumstances for a claim's withdrawal (for example 240 days after the claim's initiation), it is not per se improper for a claimant to opt not to proceed even after passing certain milestones expressly set forth for that purpose. Indeed, in *Otto* I permitted withdrawal of the claim *after* a full hearing (but before a reasoned entitlement decision had issued). *Otto*, 2020 WL 4719285, at *3.

Claimants with HPV/dysautonomia claims who in effect "abandon" the Program should not be rewarded for their tactical choice, even if it literally is permitted (or at least not forbidden) by the Act or Vaccine Rules. I am *not* compelled by the Vaccine Act to award fees to unsuccessful claimants (even where, as here, reasonable basis is established)—and therefore these kind of circumstances strongly support reducing fees, in order to induce Program attorneys present and future to take care in how much time they invest in HPV vaccine injury claims that may not ultimately remain before the Court.

Were I to award the sum requested herein without adjustment, the total fees and costs that would have been incurred (in a case that was, in the end, voluntarily dismissed) would approach six figures. This is not reasonable. I will instead apply a 10 percent reduction to *all* fees and costs requested in the final fees motion. This means I will award the lesser sums of $15,426.54 in attorney's fees, and $9,281.25 in costs.[6] Should counsel file any similar HPV/dysautonomia claims in the future with the intent to "pull" the case once the requirements for a minimal stay in the Program have been met, the amount of work invested in the matter should be kept to a reasonable limit, or greater percentage reductions can be expected.

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT IN PART** Petitioner's Motion for Attorney's Fees and Costs, awarding a total of **$24,707.79,** reflecting $15,426.54 in attorney's fees and $9,281.25 in costs, in the form of a check made jointly payable to Petitioner and his attorney Ms. Jessica Wallace. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[7]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[6] The initial requested attorney's fees were $17,140.60 x 0.10 = $1,714.06, and $17,140.60 - $1,714.06 = $15,426.54. The initial requested costs were $10,312.50 x 0.10 = $1,031.25, and $10,312.50 - $1,031.25 = $9,281.25.

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.